**Harrison MANN et al., Plaintiffs,**

v.

**Levin Nock DAVIS et al., Defendants.**

**Civ. A. No. 2604.**

United States District Court
E. D. Virginia,
at Alexandria.

Sept. 18, 1964.

Edmund D. Campbell, Arlington, Va., and E. A. Prichard, Fairfax, Va., for plaintiffs.

Henry E. Howell, Jr., Sidney H. Kelsey, and Leonard B. Sacks, Norfolk, Va., for plaintiff-interveners.

Robert Y. Button, Atty. Gen. of Va., R. D. McIlwaine, III, Asst. Atty. Gen. of Virginia, David J. Mays, and Henry T. Wickham, Richmond, Va., for defendants.

Before BRYAN, Circuit Judge, and HOFFMAN and LEWIS, District Judges.

ALBERT V. BRYAN, Circuit Judge:

██ A foremost concern in framing the order on the mandate of the Supreme Court affirming our original decree is the question of the maximum period in which the present, 1963, General Assembly elected under the condemned statute may still function and with what powers. In our opinion it must expire as to both houses not later than the 2nd Wednesday in January 1966.

██ We think the 1963 Assembly necessarily is empowered to enact the requisite reapportionment laws. There is no other body to do so, and unless its jurisdiction is recognized for this purpose the State would be helpless to accomplish the reapportionment. The Supreme Court has tacitly approved such accordance of provisional vitality to the existing legislature. Maryland Committee for Fair Representation v. Tawes, 377 U.S. 656, 675, 84 S.Ct. 1429, 12 L.Ed. 2d 595 (1964); Reynolds v. Sims, 377 U.S. 533, 585, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964) adopting the view expressed by Justice Douglas concurring in Baker v. Carr, 369 U.S. 186, 250 footnote 5, 82 S.Ct. 691, 7 L.Ed.2d 663.

██ We think, also, that after the 1963 Assembly has enacted a constitutionally valid reapportionment statute—but not before then—and during the interval between its adoption and the commencement of the terms of the Senators and Delegates chosen in the 1965 elections, *vide post*, the Assembly should not be restrained from considering and passing such legislation as it considers necessary or proper in the public interest. If the present legislature could not act in this interim, a potentially dangerous interregnum could result, for there would be no legislature available in an emergency. Moreover, if this authority were not conceded, special elections for the creation of a new General Assembly would have to be called immediately after the passage of the reapportionment statute. This would mean an election of Delegates to serve for a matter of months, when a primary election of Delegates is probable in July and a regular general election is set for November, 1965. That would be an undue burden upon the State's elective processes. In these exigencies general principles of equity, as noted by the Supreme Court in the decisions just cited, sustain an order permitting such a temporary continuance of the powers of the current legislature.

In the effort to minimize disruption of the State's elective processes as far as possible, but still consistently with our first order, it is well to recall those processes and consider their application here. When our finding of invalidity in the legislative apportionment was made in November 1962, both houses of the General Assembly were to stand for election the following year, 1963. During the temporary stay of enforcement of this finding, the 1963 election proceeded upon the unconstitutional apportionment. Delegates where then chosen for 2-year terms expiring on the 2nd Wednesday in January 1966, and the Senators were selected for 4 years each, that is until the 2nd Wednesday in January 1968.

Orderly procedure would, therefore, suggest that the 1963 House of Delegates should continue in being until the expiration of their terms in January 1966. Cf. Reynolds v. Sims, supra, 377 U.S. 533, 585, 84 S.Ct. 1362 (June 15, 1964). In the November 1965 general election a House of Delegates will, under the Virginia law, be elected to assume their duties on the 2nd Wednesday in January 1966. Of course, the 1965 House would be serving under the new apportionment.

As noted, however, the 1963 Senate would not normally leave office until January 1968. Elected on a void pattern of representation, there is no warrantable foundation for its accreditation beyond January 1966. Further, if it should be allowed to survive until 1968, the General Assembly—from January 1966 to January 1968—would be composed of a House of Delegates elected on one (a valid) scheme of apportionment with a Senate elected upon another (invalidated) plan. This, too, would be constitutionally unjustifiable. Together the two houses in a bicameral system form a unitary and entire legislature. For equality of popular representation they are mutually complementary, and constitutional validity is not fulfilled if one house is deliberately permitted to lag behind the other in maintaining fairness of representation. Cf. Maryland Committee for Fair Representation v. Tawes, supra, 377 U.S. 656, 673, 84 S.Ct. 1429.

Incidentally, practical difficulties might develop if the life of the 1963 Senate lasted until 1968. In the event of vacancies in the Senate, as an illustration, they could not be filled because no elections may be conducted under the nullified apportionment statutes. Reynolds v. Sims, supra, 377 U.S. 533, 585, 84 S.Ct. 1362. Probably none could be held under the new act because of the subsequent rearrangement of the districts. While such eventualities might occur in the House of Delegates also, the opportunity there for such contingencies is for one year only—1965.

For these reasons we hold that the terms of the 1963 elected Senators as well as Delegates must come to an end not later than January 1966. Unavoidably, this will mean a special election of Senators to serve from January 1966 to January 1968. However, to repeat, we have stated only the maximum limits of the life of the present legislature. We do not mean to say that special elections may not be called earlier than November 1965, if the legislature desires, so that a General Assembly under the new reapportionment statute might be constituted before January 1966.

LEWIS, District Judge, and WALTER E. HOFFMAN, Chief Judge, concur.

### ORDER ON MANDATE

This action came on to be heard upon the mandate of the Supreme Court of the United States, 377 U.S. 678, 84 S.Ct. 1441, 12 L.Ed.2d 609 affirming the judgment order of this Court entered November 28, 1962, 213 F.Supp. 577, upon the motions of the plaintiffs and intervening plaintiffs for an order on said mandate and the argument of counsel; upon a consideration of all of which it is

Declared, adjudged and ordered:

1. That the Governor of Virginia and the Attorney General be dismissed as parties defendant to this action;

2. That the motion of the defendants to dismiss the complaint and intervening petition be denied;

3. That the acts of the General Assembly of Virginia, approved April 7, 1962, appearing as Chapter 635, page 1266, and Chapter 638, page 1269 of the 1962 Acts of the Assembly of Virginia, deny the plaintiffs and plaintiff-interveners and those persons similarly situated the equal protection of the laws in contravention of the Fourteenth Amendment of the Constitution of the United States, and that the said acts for that reason are void and of no effect;

4. That the order entered by this court on November 28, 1962 be in all respects reaffirmed but the enforcement of said order be further stayed until December 15, 1964 insofar as necessary to afford ample time for the General Assembly of Virginia to be called and convened in special session, if the Governor or the requisite number of members of the General Assembly are so advised, for the purpose of enacting constitutionally valid reapportionment statutes for both houses of the General Assembly, and enact statutes to effectuate said reapportionment by providing for the election of members of both houses of the General Assembly from the districts of the State as reapportioned;

5. That, for the reasons set forth in the opinion filed this day, the terms of the present members of the House of Delegates shall not be terminated by force of the said order before, but shall terminate upon, the expiration of the terms for which they were elected in November, 1963 or in any special election thereafter, that is on the day before the second Wednesday of January, 1966;

6. That, for the reasons set forth in said opinion, the terms of the present members of the Senate, who were elected in November 1963 or in any special election thereafter, shall not be terminated by force of the said order before, but shall terminate upon, the expiration of the terms of the members of the House of Delegates elected in November, 1963 or thereafter as aforesaid, that is the day before the second Wednesday in January, 1966;

7. That the motion of the plaintiffs and plaintiff-interveners that the present General Assembly be enjoined at this time from enacting any legislation other than the said reapportionment statutes be denied; but by way of a declaratory judgment the court now states that after the enactment of a constitutionally valid reapportionment statute the present General Assembly may until the 2nd Wednesday in January 1966 consider and pass such legislation as it deems necessary or proper in the public interest, unless before that date through special elections a General Assembly is chosen in conformity with the new reapportionment statute,

8. That the motion of the defendants for a continuance is also denied, in view of the stay herein granted of the effectiveness of the order issued by this Court on November 28, 1962;

9. That the plaintiffs and plaintiff-interveners recover of the defendants their statutory costs, assessed or assessable in the Supreme Court and in this court, and that the motion of the plaintiff-interveners for an allowance of counsel fees as a part of said costs is denied; and

10. That if the steps stated in paragraph 4 hereof for reapportionment be not taken before December 15, 1964, or if taken they do not meet the requirements of a constitutionally valid reapportionment, then the plaintiffs, the plaintiff-interveners and any party hereafter granted leave to intervene, may apply to the court for such further orders as may be required; and jurisdiction of this action is hereby retained for entry of such other orders as may be necessary or proper.